IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

MATTHEW K. ERISMAN,                    *

    Plaintiff                              *

      v                                  *          Civil Action No. DKC-17-0054

WARDEN CASEY CAMPBELL,                  *

    Defendant                              *
                          ***

## MEMORANDUM OPINION

Defendant Warden Casey Campbell filed a motion to Dismiss or, in the alternative, motion for summary judgment. ECF No. 16. Plaintiff has responded. ECF No. 21. Upon review of the papers and exhibits filed, the court finds an oral hearing in this matter unnecessary. *See* Local Rule 105.6 (D. Md. 2016). For the reasons stated below, the motion will be granted.

## Background

This case was instituted upon receipt of correspondence from Plaintiff Matthew K. Erisman, an inmate held at the Dorsey Run Correctional Facility ("DRCF"). ECF No. 1. Plaintiff claimed that he was denied access to the courts as his housing unit had no access to a law library. ECF No. 1, p. 1. He also "request[ed] protection from retaliation against [him] from the Administration and the Staff of the Department of Public Services and Correctional Services (DPSCS) for exercising [his] First Amendment Right to" file administrative remedies and cases in the state and federal courts. *Id.* Plaintiff clarified his claims by way of a court-directed amended complaint (ECF No. 6), seeking protection from retaliation, (*id.*, p. 10), the award of 405 days work credits, the award of filing fees, damages for each month of work release missed, to be released to home detention, and $100,000 for pain and suffering. *Id.*, p. 11.

The following facts are undisputed or construed in favor of Plaintiff, unless otherwise noted.

## A.    Claims regarding job assignments/work release

Plaintiff alleges that DPSCS eliminated clerk positions and second shifts, that inmates are classified as sanitation workers but DPSCS requires they do the work of clerks, and also requires multiple shifts without paying or crediting the inmates for the work performed.  ECF No. 6, p. 8. Plaintiff claims that sanitation positions earn 5 work credits per month while clerical positions earn 10 credits per month.  Plaintiff claims that he did work beyond his assigned sanitation position for which he was never credited.  *Id*.

Plaintiff was transferred to DRCF on July 16, 2015.  ECF No. 16-2, ¶ 2 (Campbell Decl); ECF No. 16-3, ¶ 2 (Greene Decl).[1]  David Greene, Case Management Manager, avers that on July 28, 2015, Plaintiff was seen by Case Management for his initial assignment and it was recommended he be placed in the job bank.  ECF No. 16-3 ¶ 4; *see also* ECF No. 16-3, p. 4 (case management action).  The recommendation was approved on August 5, 2015.  *Id*.  On August 27, 2015, Plaintiff was reassigned to a sanitation job via "Authority Move" which is described as a means to assign administratively an inmate who is on a waiting list or in a job bank into a specific job or program.  ECF No. 16-3, ¶ 5.  Plaintiff was assigned to serve as a sanitation worker for 15 days when, on September 10, 2015, he was reassigned via "Authority Move" to "Worker-General job" so that he could be assigned to the Property Room.  ECF No. 16-3, ¶ 6; *see also* ECF No. 16-3, p. 5 (case management action).  Greene denies that Plaintiff was instructed to perform any duties not expected of inmates assigned as property workers.  ECF No. 16-3, ¶ 6.  Plaintiff earned 5 days of work credit per month until March 4, 2016 when he was re-assigned to "Utility minimum" and began to earn work credit at the rate of 10 days per month.  ECF No. 16-3, ¶¶ 6 &

---

[1]    Greene further avers that at that time Plaintiff received a copy of the DRCF Inmate Orientation Handbook. *Id*.  Plaintiff disputes receiving it.  ECF No. 21, p. 1.

10; *see also* ECF No. 16-3, p. 7 (case management action).[2]  Greene advises that inmates are not permitted to work for compensation in more than one job at a time.  ECF No. 16-3, ¶ 7.

Plaintiff states that on January 31, 2017, he became eligible for work release.  He was offered a work release position doing the same job, in the same building he had held for 11 months, but Warden Campbell denied the request without explanation.  ECF No. 6, p. 11.  Plaintiff indicates that the denial of work release adversely impacted him economically, as the work release position paid $0.75 more per hour than the work as previously classified.  *Id.*

Campbell maintains that participation in work release is a privilege and mere eligibility for work release does not imply suitability for the program.  ECF No. 16-3, ¶ 8 (quoting Division of Correction Case Manager Manual).  Warden Campbell avers that on April 5, 2017, he denied Plaintiff's request to be assigned to work release due to public safety concerns arising from the heinous nature of Plaintiff's offense which included his beating the victim in the head with a claw hammer and stabbing the victim with an 8 inch blade.  ECF No. 16-2, ¶ 4 (Campbell Decl.).  Greene confirms that on April 3, 2017, Case Management staff recommended Plaintiff for work release, but that upon review and at the recommendation of Supervisor Aaron Anakaraonye, Warden Campbell denied Plaintiff work release status.  ECF No. 16-3, ¶ 12.  Plaintiff questions why the issue of public safety became a concern at this time when he had been assigned to the same position for 15 months with apparently no concern for risk to public safety.  ECF No. 21, p.

---

[2]     Plaintiff notes that the case management forms were not signed by his assigned case manager.  ECF No. 21, p. 1.  He states that in his experience each time he was seen by a case manager throughout his incarceration he was required to sign paperwork and none of these papers were signed by him.  He thus argues that Greene has committed perjury as Plaintiff maintains that the forms were filled out by "some secretary," not a case manager, and that the unsigned forms demonstrate he did not see a case manager.  *Id.*  Plaintiff states that Sgt. Clayton offered Plaintiff a job in the sanitation detail due to his trustworthiness and that the "Authority Move" was due to Clayton's request rather than Plaintiff being assigned to a case manager.  *Id.*  Plaintiff states that Clayton's inquiry rather than any action by a case manager also caused his move from sanitation to the property room.  *Id.*  Plaintiff further disputes Defendant's records by indicating that he signed his Home Detention Waiver of Extradition and Pre-Release Extradition on August 31, 2017.  *Id.*, p. 2.  He also disputes that he saw a case manager regarding the receipt of medical clearance on March 3, 2016.  *Id.*  For the reasons that follow, Plaintiff's disputes of the record evidence are not material to the resolution of this case.

2. He notes that other inmates with serious convictions have been approved for work release at this location. *Id*.

     **B.**        **Access to Courts Claims**

Additionally, Plaintiff states that at the time he was attempting to exhaust his administrative remedies regarding the number of credits he earned, there was no law library at DRCF and therefore he was unable to research the Code of Maryland Regulations. ECF No. 6; ECF No. 21, p. 3. Plaintiff states that while there is now a library at DRCF, the legal portion of the library "lacks any available material to assist inmates in accessing the courts." *Id*. He states that the Code of Maryland Regulations provided is used and from 2011 with "half the pages[] missing." *Id*. Plaintiff further claims that Division of Correction Directives (DCD) are provided on disks but that there are no working computers so that they are unusable. He also claims that the lack of working computers prevents inmates from researching case law and denies them the ability to use the Legal Assistance to State Institutions (LASI) forms. *Id*.

Defendant offers that the DRCF library is open to inmates twice a week, once during the day and once in the evening. ECF No. 16-4, ¶ 2. (Schwabeland Decl.); ECF No. 16-3, ¶ 14. Greene and Schwabeland, School Principal for DRCF Education Department, each aver that pursuant to Division of Correction Library Policy, DRCF, a pre-release facility, is not required to maintain reference materials onsite. ECF No. 16-3, ¶ 15; ECF No. 16-4, ¶ 2. Inmates at DRCF who wish to access legal reference materials may complete a request form using LASI program. *Id*. Greene and Schwabeland aver that DRCF has no record of any LASI request submitted by Plaintiff. *Id*.

Plaintiff states that Warden Campbell did not answer his administrative remedy procedure (ARP) complaint until after he filed the instant complaint. ECF No. 6, p. 8. Plaintiff alleges that

"the Inmate Grievance Office (IGO) denied his appeal because [. . .] of improper paperwork." *Id.* He states that he filed the ARP paperwork provided to him by DRCF and the dismissal demonstrates DRCF's lack of concern for the Constitution which Plaintiff maintains provides inmates the right to file grievances and have access to the courts. *Id.* He complains that the IGO did not address his claims but rather issued a blanket denial due to DRCF providing the improper paperwork. *Id.*

Greene avers that prior to Plaintiff's filing of this case on January 5, 2017, Plaintiff had filed only one ARP while housed at DRCF. ECF No. 16-3, ¶ 16; ECF No. 16-3, pp. 11—22 (ARP 0182-16 DCRF). The ARP concerned the awarding of work credits. ECF No. 16-3, p. 11-22. The ARP was denied by the Warden (*id.*, p. 23) and Plaintiff appealed to the IGO in a letter dated December 29, 2016 (the same date as the complaint in this case). ECF No. 16-5, ¶ 3.a; ECF No. 16-5, pp. 3-19 (IGO records). The complaint was filed with the IGO on January 5, 2017. *Id.* The IGO issued its decision on February 21, 2017, dismissing the grievance for failure to state a claim upon which administrative relief could be granted. ECF No. 16-5, ¶ 3.a; ECF No. 16-5, pp. 20-21.

On February 13, 2017, Plaintiff filed a letter with the IGO that was received on February 28, 2017, referencing an appeal from the disposition of an unidentified ARP regarding legal mail. ECF No. 16-5, ¶3.b; ECF No. 16-5, p. 22-23. On July 11, 2017, the IGO directed Plaintiff to submit additional information within 30 days or risk dismissal of the complaint. *Id.* As of August 15, 2017, Plaintiff had failed to submit the requested information. *Id.*

### C.   Retaliation

Plaintiff alleges that he has suffered retaliation. ECF No. 6, p. 9. Plaintiff states that outgoing legal mail was opened by the staff at DRCF. *Id.*; ECF No. 11. Plaintiff states that he

filed an ARP regarding this issue but heard nothing from Warden Campbell other than that an investigation was being conducted. *Id.*

Russell Neverdon, Executive Director of the IGO avers that Plaintiff's February 13, 2017, letter to the IGO was received by the IGO on February 28, 2017, and considered filed March 2, 2017. ECF No. 16-5, ¶ 3.b, ECF No. 16-5, pp. 22-48. As of the filing of Defendant's dispositive motion the matter was pending before the IGO awaiting Plaintiff's submission of additional information the IGO requested from Plaintiff on July 11, 2017. *Id.*

Plaintiff also alleges that he received a rebate from an approved vendor which the finance office took 62 days to credit to Plaintiff's account. ECF No. 6, p. 11. He states that time frame is unreasonable and evidence of the retaliation he suffered. *Id.* Plaintiff indicates that the check was dated January 5, 2017, the envelope postmarked January 10, 2017, and he received the check stub January 11, 2017. ECF No. 21, p. 3. The receipt from finance at DRCF was not dated until March 7, 2017.[3] *Id.* Greene indicates that the finance department received the vendor check complained of on March 7, 2017 and deposited it into Plaintiff's account the same day. ECF No. 16-3, ¶15.

Plaintiff indicates the court should audit DRCF to "ask what it takes to see a Case Manager or to get reclassified." ECF No. 6, p. 9. He states that for a facility where inmates are to "be released in the near future DRCF hampers every step of the way." *Id.* Additionally, he claims that Campbell's denial of the work release position was in retaliation for Plaintiff having filed this complaint.[4] *Id.*

---

[3] Plaintiff also catalogues a host of problems with DRCF processing inmates' money vouchers and sending money home to support inmates' families. ECF No. 21, p. 9.

[4] In letters to the court dated August 22, 2017 and October 27, 2017, Plaintiff indicates that he has suffered additional retaliation in that his case manager refused to file the appropriate paperwork for Plaintiff's transfer to home detention until the day Plaintiff is eligible, because "if he files prior to [Plaintiff's] eligibility date th[e]n he will be lying if he checks the box that[ ] says [Plaintiff is] eligible, and he refuses to lie telling [Plaintiff] he absolutely will not do it." ECF Nos. 17 & 23. Plaintiff claims that other case managers file the paper work 30 days before the inmate's eligibility date. *Id.* Plaintiff baldly alleges that his act is in retaliation for his having filed the instant case.

The record evidence demonstrates that Plaintiff met with a case manager on January 6, 2016, to discuss a security reclassification which Plaintiff initiated on December 21, 2015. ECF No. 16-3, ¶ 9. Other than as initiated by Plaintiff, Greene avers that there was no reason for case managers to meet with Plaintiff until January of 2017 when he was scheduled for his Annual Review. *Id.* Nevertheless, Plaintiff's case was reviewed by case management staff on March 3, 2016, after receipt of medical clearance. *Id.* Case management review occurred on April 3, 2016, regarding consideration for work release and again on April 19, 2016, regarding work-release eligibility and progression to work release outside detail. *Id.*, ¶¶ 11 & 12; ECF No. 16-2, ¶ 3. In May of 2016, case management reassigned Plaintiff to pre-release detail. *Id.*, ¶ 11. Plaintiff also offers that he met with his case manager supervisor in November of 2016. ECF No. 6, p. 5.

Greene indicates that Division of Correction inmates are screened for program eligibility at least annually. ECF No. 16-3, ¶ 13. Eligibility for placement on home detention is determined by the severity of the inmate's current offense. *Id.* At the time of filing of this complaint, Plaintiff was serving a sentence for attempted second degree murder. He was eligible for placement on home detention when he was within 90 days from a definite release date. Plaintiff was provided this information on February 9, 2016 and January 31, 2017. *Id.*

---

He also claims that "This is a perfect example of the inconsistency and incompetence that is a huge part of my lawsuit against (DRCF) and Case Management." *Id.* Plaintiff further indicates that instead of his assigned case manager filing the appropriate paperwork, a different case manager, Mr. Ratliff, completed the proper paperwork for Plaintiff. ECF No. 23, p. 1. Plaintiff claims that while filing the home detention paperwork Ratliff had him sign pre-release paperwork which "the State claimed I had signed months earlier in their response to my law suit." *Id.*

In his October, 2017 letter, Plaintiff details the difficulties he experienced in having his release facilitated, even after DRCF had conducted a home visit, including his being advised that he had been approved for release while his family members were advised he was on "facility hold." *Id.*, p. 2. He attributes delays in his release to home detention to further retaliation against him as well as to racial discrimination against him by Mr. Akeroni and discrimination against his mother who is hearing impaired. *Id.*

**Standard of Review**

### A.      Motion to Dismiss

The purpose of a motion to dismiss filed pursuant to Fed. R. Civ. P. 12(b)(6) is to test the sufficiency of the plaintiff's complaint.  *See Edwards v. City of Goldsboro,* 178 F.3d 231, 243 (4th Cir. 1999).  The dismissal for failure to state a claim upon which relief may be granted does not require defendant to establish "beyond doubt" that Plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 561 (2007).  Once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint.  *Id*. at 563.  The court need not, however, accept unsupported legal allegations, *see Revene v. Charles County Comm'rs,* 882 F.2d 870, 873 (4th Cir. 1989), legal conclusions couched as factual allegations, *see Papasan v. Allain,* 478 U.S. 265, 286 (1986), or conclusory factual allegations devoid of any reference to actual events, *see United Black Firefighters v. Hirst*, 604 F.2d 844, 847 (4th Cir. 1979).

### B.      Motion for Summary Judgment

Summary Judgment is governed by Fed. R. Civ. P. 56(a) which provides that:

> The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.

The Supreme Court has clarified that this does not mean that any factual dispute will defeat the motion:

> By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact.

*Anderson v. Liberty Lobby, Inc*., 477 U. S. 242, 247-48 (1986) (emphasis in original).

"A party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 525 (4th Cir. 2003) (alteration in original) (quoting Fed. R. Civ. P. 56(e)). The court should "view the evidence in the light most favorable to . . . the nonmovant, and draw all inferences in her favor without weighing the evidence or assessing the witness' credibility." *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 644-45 (4th Cir. 2002). The court must, however, also abide by the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat*, 346 F.3d at 526 (internal quotation marks omitted) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993), and citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986)).

In *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986) the Supreme Court explained that in considering a motion for summary judgment, the "judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*. at 248. Thus, "the judge must ask himself not whether he thinks the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the [nonmoving party] on the evidence presented." *Id*. at 252.

The moving party bears the burden of showing that there is no genuine issue as to any material fact. No genuine issue of material fact exists if the nonmoving party fails to make a sufficient showing on an essential element of his or her case as to which he or she would have the burden of proof. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). Therefore, on those

issues on which the nonmoving party has the burden of proof, it is his or her responsibility to confront the summary judgment motion with an affidavit or other similar evidence showing that there is a genuine issue for trial.

## Analysis

### A.    Exhaustion

Defendants raise the affirmative defense that Plaintiff has failed to exhaust his administrative remedies.  If Plaintiff's claims have not been properly presented through the administrative remedy procedure they must be dismissed pursuant to the Prisoner Litigation Reform Act ("PLRA"), 42 U.S.C. §1997e.  The PLRA provides in pertinent part that:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a).  Defendants have the burden both to plead and to prove the failure to exhaust available remedies.  *Jones v. Bock*, 549 U.S. 199, 212 (2007).

For purposes of the PLRA, "the term 'prisoner' means any person incarcerated or detained in any facility who is accused of, convicted of, sentenced for, or adjudicated delinquent for, violations of criminal law or the terms and conditions of parole, probation, pretrial release, or diversionary program."  42 U.S.C. § 1997e(h).  The phrase "prison conditions" encompasses "all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong."  *Porter v. Nussle*, 534 U.S. 516, 532 (2002); *see Chase v. Peay*, 286 F.Supp.2d 523, 528 (D. Md. 2003), *aff'd*, 98 Fed. Appx. 253 (4th Cir. 2004).

A claim that has not been exhausted may not be considered by this court.  *See Jones v. Bock*, 549 U.S. at 220. In other words, exhaustion is mandatory.  *Ross v. Blake*, _____ U.S. _____,

136 S.Ct. 1850, 1857 (2016). Therefore, a court ordinarily may not excuse a failure to exhaust. *Ross*, 136 S.Ct. at 1856 (citing *Miller v. French*, 530 U.S. 327, 337 (2000) (explaining "[t]he mandatory 'shall'. . . normally creates an obligation impervious to judicial discretion")).

Ordinarily, an inmate must follow the required procedural steps in order to exhaust his administrative remedies. *Moore v. Bennette*, 517 F.3d 717, 725 (4th Cir. 2008); *see Langford v. Couch*, 50 F.Supp. 2d 544, 548 (E.D. Va. 1999) ("[T]he . . . PLRA amendment made clear that exhaustion is now mandatory."). Exhaustion requires completion of "the administrative review process in accordance with the applicable procedural rules, including deadlines." *Woodford v. Ngo*, 548 U.S. 81, 88, 93 (2006). This requirement is one of "proper exhaustion of administrative remedies, which 'means using all steps that the agency holds out, and doing so *properly* (so that the agency addresses the issues on the merits).'" *Woodford* 548 U.S. at 93 (quoting *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002) (emphasis in original). But, the court is "obligated to ensure that any defects in [administrative] exhaustion were not procured from the action or inaction of prison officials." *Aquilar-Avellaveda v. Terrell*, 478 F.3d 1223, 1225 (10th Cir. 2007); *see Kaba v. Stepp*, 458 F.3d 678, 684 (7th Cir. 2006).

An inmate need only exhaust "available" remedies. 42 U.S.C. § 1997e(a). The Supreme Court has rejected a "freewheeling approach to exhaustion as inconsistent with the PLRA." *Ross*, 136 S.Ct. at 1855. In particular, the Court rejected a "special circumstances" exception to the exhaustion requirement. *Id*. at 1856-57. But, it reiterated that "[a] prisoner need not exhaust remedies if they are not 'available.'" *Id*. at 1855. "[A]n administrative remedy is not considered to have been available if a prisoner, through no fault of his own, was prevented from availing himself of it." *Moore*, 517 F.3d at 725.

The Supreme Court stated in *Ross* that an administrative remedy is available if it is "'capable of use' to obtain 'some relief for the action complained of.'" 136 S. Ct. at 1859 (quoting *Booth*, 532 U.S. at 738). Thus, an inmate must complete the prison's internal appeals process, if possible, before bringing suit. *See Chase*, 286 F. Supp. 2d at 529-30. As a prisoner, plaintiff is subject to the strict requirements of the exhaustion provisions. *See Porter v. Nussle*, 534 U.S. at 528 (no distinction is made with respect to exhaustion requirement between suits alleging unconstitutional conditions and suits alleging unconstitutional conduct). Exhaustion is also required even though the relief sought is not attainable through resort to the administrative remedy procedure. *See Booth*, 532 U.S. at 741.

The *Ross* Court outlined three circumstances when an administrative remedy is unavailable and an inmate's duty to exhaust available remedies "does not come into play." 136 S. Ct. at 1859. First, "an administrative procedure is unavailable when (despite what regulations or guidance materials may promise) it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates." *Id.* at 1859. Second, "an administrative scheme might be so opaque that it becomes, practically speaking, incapable of use. In this situation, some mechanism exists to provide relief, but no ordinary prisoner can discern or navigate it." *Id.* The third circumstance arises when "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id.* at 1860.

On the record before the court, Defendants have not proven as a matter of law that Plaintiff failed to exhaust "available" remedies or that correctional staff did not thwart him in his effort to do so. Plaintiff claims that the law library at DRCF was so lacking at the time he attempted to pursue his administrative remedies that he could not research the Code of Maryland

Regulations. He further alleges that grievance forms were unavailable to him. Additionally, it appears that Plaintiff filed his ARP regarding his industrial credits on April 14, 2016 (See ECF No. 16-3, p. p. 11-22) but the Warden inexplicably did not respond until almost a year later on March 20, 2017 (*id.*, p. 23). Given the difficulties Plaintiff has catalogued regarding accessing and pursuing the grievance process, Defendants' affirmative defense fails.

### B. Supervisory Liability

It is well established that the doctrine of respondeat superior does not apply in § 1983 claims. *See Love-Lane v. Martin*, 355 F.3d 766, 782 (4th Cir. 2004) (no respondeat superior liability under § 1983); *see also Trulock v. Freeh*, 275 F.3d 391, 402 (4th Cir. 2001) (no respondeat superior liability in a *Bivens* suit). Liability of supervisory officials "is not based on ordinary principles of respondeat superior, but rather is premised on 'a recognition that supervisory indifference or tacit authorization of subordinates' misconduct may be a causative factor in the constitutional injuries they inflict on those committed to their care.'" *Baynard v. Malone*, 268 F.3d 228, 235 (4th Cir. 2001) (quoting *Slakan v. Porter*, 737 F.2d 368, 372 (4th Cir. 1984)). Supervisory liability under § 1983 must be supported with evidence that: (1) the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to citizens like the plaintiff; (2) the supervisor's response to the knowledge was so inadequate as to show deliberate indifference to or tacit authorization of the alleged offensive practices; and (3) there was an affirmative causal link between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff. *See Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994). Other than the denial of work release privileges, Plaintiff has failed to allege, much less demonstrate, any personal involvement by Warden Campbell in any of the claims alleged.

## C. Job Assignment and Work Release

As a general matter, prisoners are not constitutionally entitled to participate in programs or hold job assignments. Absent a showing of significant hardship, the removal from a job or program does not give rise to a constitutional claim. "[G]iven a valid conviction, the criminal defendant has been constitutionally deprived of his liberty to the extent that the State may confine him and subject him to the rules of its prison system so long as the conditions of confinement do not otherwise violate the Constitution." *Meachum v. Fano*, 427 U.S. 215, 224 (1976); *see also Sandin v. Conner*, 515 U.S. 472 (1995), requiring an atypical and significant hardship as prerequisite to creation of a constitutionally protected liberty interest. A protected liberty interest under this standard "will be generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force . . . , nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin*, 515 U.S. at 484.

"Absent a state created liberty right, assignment to a work release center is within the discretion of prison officials. . . ." *Beasley v. Duncil*, 792 F. Supp. 485, 486 (S.D.W. Va. 1992), *aff'd sub nom. Hundley v. Skaff*, 9 F.3d 1106 (4th Cir. 1993) (citing *Altizer v. Paderick*, 569 F.2d 812 (4th Cir. 1978); *Gaston v. Taylor*, 946 F.2d 340 (4th Cir. 1991)). There is no liberty interest in Maryland work release programs. *See Holmes v. Robinson*, 84 Md. App. 144, 153, 578 A. 2d 294, 298 (1990) (finding no state-created liberty interest in a particular work assignment in Maryland). Denial of participation in or removal from a work-release program is simply not an atypical and significant hardship. *See Kitchen v. Upshaw*, 286 F. 3d 179, 186-87 (4th Cir. 2002) (holding no constitutionally protected liberty interest in initial work-release determinations); *Dominique v. Weld*, 73 F. 3d 1156, 1160 (1st Cir. 1996) (holding removal from work release and

transfer to medium security prison not an "atypical and significant hardship"); *Callender v. Sioux City Residential Treatment Facility*, 88 F. 3d 666, 669 (8th Cir. 1996) (holding revocation of work release was not an atypical or significant deprivation).

Similarly, Plaintiff's claims regarding his job assignments preventing him from earning the maximum number of diminution of confinement credits fails. The lack of opportunity to earn or have applied diminution credits is not an atypical and significant hardship. *See Bulger v. U. S. Bureau of Prisons*, 65 F.3d 48, 50 (5th Cir. 1995) (holding termination from UNICOR job did not impose an atypical and significant hardship on the inmate). There is no constitutional right to participate in any particular in-prison program. *See, e.g., Meachum* 427 U.S. at 224-25; *Paoli v. Lally*, 812 F.2d 1489 (4th Cir. 1987); *see also Carter v. Morris*, 164 F.3d 215, 220-21 (4th Cir. 1999); *West v. Atkins*, 815 F.2d 993, 996 (4th Cir. 1987), *rev'd on other grounds*, 487 U.S. 42 (1988); *Garrett v. Angelone*, 940 F. Supp. 933, 942 (W.D. Va. 1996), *aff'd*, 107 F.3d 865 (4th Cir. 1997) (no constitutional right to job or rehabilitation in prison); *Penrod v. Zavaras*, 94 F.3d 1399, 1406 (10th Cir. 1996) (no constitutional right to job).

Because it is well established that prisoners do not have a constitutional right to access programs or to demand to be housed in one prison versus another, absent a showing of significant hardship, the portion of Plaintiff's complaint regarding these allegations must be dismissed. To the extent Plaintiff claims that written directives regarding his meeting with case management staff were not followed to the letter in reviewing his suitability for work release or assignment to particular jobs, the adoption of procedural guidelines does not give rise to a liberty interest; thus, the failure to follow regulations does not, in and of itself, result in a violation of due process. *See Culbert v. Young*, 834 F.2d 624, 628 (7th Cir. 1987).

To the extent Plaintiff claims that the failure to assign him to particular prison jobs and/or work release resulted in his being under compensated, his claim also fails. An inmate is not constitutionally entitled to be paid for doing a prison job. *Sigler v. Lowrie*, 404 F.2d 659, 661 (8th Cir. 1968); *Borror v. White*, 377 F. Supp. 181, 183 (W.D. Va. 1974); *McLaughlin v. Royster*, 346 F. Supp. 297, 311 (E.D. Va. 1972). *Cf. Draper v. Rhay*, 315 F.2d 193, 197 (9th Cir. 1963) (unpaid prison labor not involuntary servitude under 13th Amendment), *accord Newell v. Davis*, 563 F.2d 123 (4th Cir. 1977) (per curiam); *Washlefske v. Winston*, 234 F.3d 179, 184-85 (4th Cir. 2000) ("Inmates can be put to work without compensation").

Each of Plaintiff's claims regarding his job and work release assignment are thus subject to dismissal.

### D.      Access to Courts

Prisoners have a constitutionally protected right of access to the courts. *See Bounds v. Smith*, 430 U. S. 817, 821 (1977). However,

> *Bounds* does not guarantee inmates the wherewithal to transform themselves into litigating engines capable of filing everything from shareholder derivative actions to slip-and-fall claims. The tools it requires to be provided are those that the inmates need in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement. Impairment of any other litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration.

*Lewis v. Casey*, 518 U. S. 343, 355 (1996).

"Ultimately, a prisoner wishing to establish an unconstitutional burden on his right of access to the courts must show "actual injury" to 'the capability of bringing contemplated challenges to sentences or conditions of confinement before the courts.'" *O'Dell v. Netherland*, 112 F. 3d 773, 776 (4th Cir. 1997) (quoting *Lewis*, 518 U.S. at 355). "The requirement that an inmate alleging a violation of *Bounds* must show actual injury derives ultimately from the

doctrine of standing, a constitutional principle that prevents courts of law from undertaking tasks assigned to the political branches." *Lewis*, 518 U.S. at 349. Actual injury occurs when a prisoner demonstrates that a "nonfrivolous" and "arguable" claim was lost because of the denial of access to the courts. *Id*. at 399.

In *Christopher v. Harbury*, 536 U.S. 403, 403 (2002), the Court characterized access-to-the courts claims as being in one of two categories. *Id* at 413-14. The first, termed "forward looking claims," are cases where an official action frustrates a plaintiff's ability to bring a suit at the present time. *Jennings v. City of Stillwater*, 383 F.3d 1199, 1208-09 (10th Cir. 2004). The second class, termed "backward looking claims," arise when a Plaintiff alleges that a specific claim "cannot be tried (or tried with all the evidence) [because past official action] caused the loss or inadequate settlement of a meritorious case." *Id*. at 1208. In this way, the official action is said to have "'rendered hollow [the plaintiff's] right to seek redress' "in the courts. *Id*. (quoting *Christopher*, 536 U.S. at 415 (brackets in original) (internal citations omitted)).

Whether the claim is forward or backward looking, a prisoner claiming he was denied access to the courts ultimately must prove he suffered an actual injury by showing that the defendant's acts hindered his ability to pursue a nonfrivolous legal claim. Conclusory allegations are not sufficient in this regard. *See Wardell v. Duncan*, 470 F.3d 954, 959 (10th Cir. 2006) (denying access to court claim based on allegation that petition for a writ of certiorari had, for unspecified reasons, been dismissed and where plaintiff did not even mention the point on appeal). The right of access to the courts is "ancillary to the underlying claim, without which a plaintiff cannot have suffered injury by being shut out of court." *Christopher*, 536 U.S. at 415.

Plaintiff must establish that his underlying claim was "nonfrivolous" or "arguable." *Christopher v. Harbury*, 536 U.S. at 415. "[T]he predicate claim [must] be described well enough

to apply the 'nonfrivolous' test and to show that the 'arguable' nature of the underlying claim is more than hope." *Id.* at 416 (footnote omitted). A prisoner's right to access the courts does not include the right to present frivolous claims. *Lewis v. Casey*, 518 U.S. at 353 n.3. It is not enough that a prisoner is prevented from filing his case, he must also show that his claim had merit. More than conclusory allegations, as offered here, is required to show actual injury.

"To state a claim that the delay or nondelivery of legal mail deprived him of meaningful access to the courts, a prisoner must allege adverse consequence resulting from the delay or non-delivery." *Pearson v. Simms*, 345 F. Supp. 2d 515, 519 (D. Md. 2003), *aff'd*, 88 F. App'x 639 (4th Cir. 2004) (quoting *White v. White*, 886 F.2d 721, 724 (4th Cir. 1989)). Plaintiff cannot meet this burden as the evidence demonstrates that on one occasion his outgoing mail was apparently tampered with. Correctional staff immediately brought the damaged envelope to Plaintiff's attention. Plaintiff was able to re-mail the documents to the IGO which indicated timely receipt of same and directed Plaintiff to supplement the proceedings. Plaintiff, through his own accord, failed to comply with the directives of the IGO. This single occurrence of interference with Plaintiff's outgoing mail, which Plaintiff has failed to attribute to any particular employee, is insufficient in this case to demonstrate any injury to Plaintiff.

Plaintiff's claims that DRCF offered no access to the library and/or no access to legal materials in its library as of January 5, 2017 (ECF No. 1 at p. 1; ECF No. 6 at p. 8), and that as of May 4, 2017, the library offered the out of date and inaccessible materials (ECF No. 6 at p. 8) are likewise unavailing. Even if Plaintiff did not have access to legal materials as he alleged, he has not established any resulting harm as required to sustain a claim. As noted above, Plaintiff's complaint was received and docketed by the IGO, with the IGO directing he supplement the

filing. He was also able to file this case. Plaintiff has failed to demonstrate how he was injured by the allegedly deficient library at DRCF.

Plaintiff's claim that the lack of access to ARP forms unconstitutionally denied him access to the courts, also must fail. "[I]nmates have no constitutional entitlement or due process interest in access to a grievance procedure." *Booker v. S.C. Dep't of Corr.*, 855 F.3d 533, 541 (4th Cir. 2017) (discussing *Adams v. Rice*, 40 F.3d 72 (4th Cir. 1994); *see Robinson v. Wexford*, 2017 WL 4838785, at *3 (D. Md. Oct. 26, 2017) ("[E]ven assuming, *arguendo*, that defendants . . . did not satisfactorily investigate or respond to plaintiff's administrative grievances, no underlying constitutional claim has been stated."). The passage of the Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e(a), makes the issue less clear in regard to a claim of denial of access to the courts arising from the denial of access to a prison grievance process. As noted above, the PLRA requires exhaustion of administrative remedies before a federal action concerning prison conditions may be filed by a prisoner.

Assuming, *arguendo*, that correctional staff did not satisfactorily investigate or respond to Plaintiff's remedy requests in a timely fashion, or failed to provide him with forms for pursuing administrative remedies, Plaintiff's claim fails as he has not alleged, much less demonstrated, any injury as a result of the alleged failure to provide forms, or to process his ARPs. As previously noted, Plaintiff was able to pursue each stage of the grievance process regarding his claim concerning his job assignments. The IGO's February 21, 2017, letter notified Plaintiff that his grievance failed to state a claim for several reasons, none of which were related to Plaintiff's complaints regarding the ARP process. Rather, Plaintiff's complaint with the IGO was dismissed due to his failure to provide all appropriate paperwork. The complaint was not dismissed because it was on the wrong form. Rather, the dismissal was based on Plaintiff's failure to include particular documents with his IGO filing.

### E.  Retaliation

"Retaliation, though it is not expressly referred to in the Constitution, is nonetheless actionable because retaliatory actions may tend to chill individuals' exercise of constitutional rights." *ACLU of Maryland, Inc. v. Wicomico Cty., Md.*, 999 F.2d 780, 785 (4th Cir. 1993) (citing *Perry v. Sindermann,* 408 U.S. 593, 597 (1972)).  A prisoner's claim that prison officials have retaliated against him for engaging in protected conduct is grounded in the First Amendment.  *See Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 285-87 (1977); *Thaddeus-X v. Blatter*, 175 F.3d 378, 388 (6th Cir. 1999) (*en banc*).  A prisoner's clearly established rights are violated when a prison official retaliates against an inmate for filing a grievance.  *Booker*, 855 F.3d 533, 546 (4th Cir. 2017).

In order to prevail on a claim of retaliation, Plaintiff must demonstrate (1) he engaged in protected First Amendment activity, (2) defendants took action that adversely affected him, and (3) a causal relationship between the protected activity and the defendant's conduct.  *See Martin v. Duffy*, 858 F.3d 239, 249 (4th Cir. 2017).

To make out a retaliation claim under § 1983, a showing of adversity is essential.  *ACLU of Maryland, Inc.*, 999 F. 2d at 785 (citation omitted).  "The plaintiff bears the burden of showing that the conduct at issue was constitutionally protected and that the protected conduct was a substantial or motivating factor in the prison officials' decision."  *Graham v. Henderson*, 89 F.3d 75, 79 (2d Cir. 1996) (citing *Doyle*, 429 U.S. at 287).  The inmate must allege facts sufficient to show that the alleged act of retaliation had a chilling effect on his exercise of the right of access to the courts.  *ACLU of Maryland,* 999 F.2d at 784.  The retaliatory actions must be likely to deter "'a person of ordinary firmness' from the exercise of First Amendment rights."  *Constantine v.*

*Rectors & Visitors of George Mason Univ.*, 411 F.3d 474, 500 (4th Cir. 2006) (quoting *Washington v. Cnty. Of Rockland*, 373 F.3d 310, 320 (2d Cir. 2004) (Sotomayor, J.)).

In the prison context, the Plaintiff must establish that the prison authorities' retaliatory action did not advance the institution's legitimate goals of preserving internal order and discipline, or that it was not narrowly tailored to achieve such goals. *Rizzo v. Dawson*, 778 F.2d 527, 532 (9th Cir.1985) (citations omitted). The preservation of internal order and discipline constitutes a legitimate goal of the correctional institution. *Id.* at 532. Claims of retaliation in the prison context are treated with skepticism "because '[e]very act of discipline by prison officials is by definition 'retaliatory' in the sense that it responds directly to prisoner misconduct.'" *Cochran v. Morris*, 73 F.3d 1310, 1317 (4th Cir. 1996) (quoting *Adams v. Rice*, 40 F.3d 72, 74 (4th Cir. 1994)).

Additionally, Plaintiff must demonstrate that the protected activity was the "'but for' cause of the adverse employment action alleged." *Ridpath v. Bd. Of Governors Marshall Univ.*, 447 F.3d 292, 318 (4th Cir. 2006). Causation can be inferred when the adverse action occurs close in time to the plaintiff's engaging in a protected activity. *See Foster v. Univ. of Maryland E. Shore*, 787 F.3d 243, 253 (4th Cir. 2015). Defendants can however offer legitimate and permissible reasons for their action in order to refute Plaintiff's evidence. *See Guessous v. Fairview Prop. Invs., LLC*, 828 F.3d 208, 217 (4th Cir. 2016).

Here, Plaintiff's conclusory allegations of retaliation in the tampering with his mail, delaying processing of his vendor check, and denial of work release fail. Plaintiff admits that correctional staff presented him with the "tampered" letter on February 13, 2017, and that he was provided the opportunity to resubmit same. ECF No. 6, p. 9. The unidentified correctional staff's handling of Plaintiff's mail facilitated his access to the grievance process as well as his ultimate

access to the courts, rather than hindering same as Plaintiff claims. The alleged delay in the processing of his vendor check is not demonstrated by the record. Moreover, even if the check had been delayed as alleged, Plaintiff has failed to demonstrate how the delay evidences a motivation to interfere with his constitutional rights. Further, by his own admission, Plaintiff indicates that the finance department at DRCF is poorly run, frequently making errors in the processing of inmates' money. ECF No. 21, p. 9. Lastly, as noted above, Plaintiff has no constitutional right to work release. Defendant explains that the denial of work release was based upon public safety considerations and was within the Warden's discretion. Plaintiff has failed to produce any evidence to contradict this claim.

Lastly, Plaintiff has failed to demonstrate as required any chilling effect as a result of the alleged retaliatory conduct. After the allegedly retaliatory conduct, Plaintiff instituted this case and prosecuted same, he also filed additional administrative grievances and prosecuted same to the IGO level. In light of the foregoing, Plaintiff has failed to demonstrate how the allegedly retaliatory conduct chilled the exercise of his right to access the courts and his claim fails.

### Conclusion

Defendant's dispositive motion will be granted.[5] A separate Order follows.


February 5, 2018

         /s/
        DEBORAH K. CHASANOW
        United States District Judge

---

[5] Having found no constitutional violation, the court need not address Defendant's claim of qualified immunity.